**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROBERT CARR** | **CIVIL ACTION NO. 19-cv-14777** |
| **versus** | **SECTION: "G" (3)** |
| | **JUDGE NANNETTE J. BROWN** |
| **ENTERPRISE MARINE SERVICES LLC** | **MAGISTRATE DANA M. DOUGLAS** |

**MEMORANDUM IN SUPPORT OF DEFENDANT ENTERPRISE MARINE SERVICES LLC'S MOTION IN LIMINE TO LIMIT PLAINTIFF'S EXPERT WITNESS TESTIMONY**

**MAY IT PLEASE THE COURT:**

EMS seeks to limit the testimony of Plaintiffs' Vocational Rehabilitation Counselor Kasey Crawford, Economist Randolph Rice, and Marine Safety & Liability Expert Captain Michael Weeks from testifying that Plaintiff would have become a Captain/Operator of an EMS vessel as there is absolutely zero evidence that Plaintiff would ever have become a Captain/Operator of an EMS vessel. Additionally, Dr. Rice should be prevented from presenting his alleged economic damages assuming that Plaintiff would work until he was seventy-four as he admits the work-life tables do not support that finding and that he only ran that scenario because Plaintiff's Counsel requested it be done.

## FACTUAL BACKGROUND

Plaintiff Robert Carr ("Plaintiff") was born on October 11, 1955 (65 years of age).[1] At the time of his alleged event, November 27, 2018, he was employed as a Tankerman for

[1] Exhibit 1, *Deposition of Plaintiff Robert Carr* at 16:12-13.

Defendant Enterprise Marine Services LLC ("EMS").[2] Plaintiff contends in this litigation that on November 27, 2018, while serving as a Tankerman aboard the M/V TOMMY, he noticed that his back was hurting after he had handled some ropes and wires to secure the barge in the fleet.[3] This alleged event was unwitnessed and Plaintiff testified that he had performed this task everyday over the course of his several years of employment with EMS.[4]

Plaintiff's Vocational Rehabilitation Counselor Kasey Crawford ("Ms. Crawford") has opined in her expert report that Plaintiff's long-term vocational goal was to be a Captain.[5] Additionally, Ms. Crawford states in her report that Plaintiff "became employed as a Tankerman in an effort to work towards his vocational goal."[6] Further, Ms. Crawford reports that Plaintiff "held a Tankerman's license and had approximately one year of schooling ahead of him to become a Captain" and that Plaintiff "would have had to attend school while continuing to work as a Tankerman in an effort to continue to gain maritime hours, thus having the ability to achieve the level of Captain likely within one to three years. As a Captain he would have had the capacity to earn $600.00 - $700.00 per day."[7] However, there is simply no evidence to support that Plaintiff would have been admitted into the Steersman Program with EMS. Additionally, Ms. Crawford is not qualified to render an opinion that Plaintiff would "likely" get into the Steersman Program whether in one, three or any years.

Additionally, Plaintiff's Economist Randolph Rice ("Dr. Rice") has taken Ms. Crawford's unqualified opinion that is not based on any evidence and used it to run alleged future economic losses of Plaintiff.[8]

---

[2] Ex. 1 at 203:17-23; 129:12-15.
[3] Ex. 1 at 129:12-131:22.
[4] Ex. 1 at 134:4-136:9.
[5] Exhibit 2, *Report of Kasey Crawford* at p. 7.
[6] Ex. 2 at p. 7.
[7] Ex. 2 at p. 7.
[8] Exhibit 3, *Report of Dr. Randolph Rice*.

Additionally, EMS requests that Dr. Rice's testimony be limited to prevent him from presenting his alleged economic damages if Plaintiff continued to work until he was "seventy-four, or another 8.75 years from trial."[9] Dr. Rice even states in his report that this work-life scenario was requested by Plaintiff's office.[10] Further, Dr. Rice opines using accepted work-life tables that Plaintiff would likely have only worked an additional 4.43 years.[11] Additionally, Dr. Rice states in his report:

> You also outlined a career path absent-injury whereby in +3.0 years from the accident date (11/28/2021) Mr. Carr would have become a Captain. Ms. Crawford reports Captaiin's pay as $600.00-$700.00 per day, or at the mid-point of $650.00 per day (via 14 "on"/7 "off") $158,166.67. Assuming Tankerman's pay until 11/28/2021 and Captain's pay thereafter, the present values of future after-tax earning capacity are $531,190.00 (work-life expectancy) and $1,105,786.00 (to age seventy-four).[12]

However, as indicated, there is no evidence that Plaintiff would have been admitted to the Steersman Program at EMS to become a Caption nor is there any reliable evidence that Plaintiff would have worked until he was seventy-four.

Finally, Plaintiff's Marine Safety and Liability expert Captain Michael Weeks is expected to find a way to testify about Steersman Programs in general and try to apply it to Plaintiff's situation in an effort to continue this false narrative. Out of an abundance of caution, EMS seeks an *Order* deterring this from occurring.

As it relates to the EMS Steersman Program, Plaintiff acknowledged that it was sophisticated and that EMS has "good training" for it.[13] Additionally, Plaintiff testified that he

---

[9] Ex. 3 at p. 1.
[10] Ex. 3 at p. 1.
[11] Ex. 3. At p.1.
[12] Ex. 3 at pp. 2-3.
[13] Ex. 1 at 181:25-182:3.

was never enrolled in it, but that he missed applying for it and then had to reapply.[14] In fact, approximately six (6) months before his alleged event, Plaintiff was contacted by EMS for an interview, which was required before any determination was made by EMS as to whether any applicant would be permitted into the Steersman Program; however, Plaintiff missed his interview.[15] Plaintiff was never interviewed for the highly competitive Program.

## LAW AND ANALYSIS

Federal Rule of Evidence 702 allows a qualified expert's opinion testimony if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[16] Federal Rule of Evidence 702 requires trial courts to exercise the role of a gatekeeper in screening proffered expert testimony, in order to prevent the admission of unreliable and speculative opinions.[17] This gate-keeping function applies not just to scientific testimony, but to all expert testimony.[18]

In performing its gate-keeping function, the trial court must determine whether the testimony will assist the trier-of-fact to understand the evidence or determine a fact in issue.[19] Courts must scrutinize the proffered expert testimony to ensure it is not only relevant, but reliable.[20] The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[21]

---

[14] Ex. 1 at 182:7-:11.
[15] Ex. 1 at 182:18-183:6.
[16] Fed. R. Evid. 702.
[17] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 584 (5th Cir. 2003); *Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 515 (E.D. La. 2002).
[18] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).
[19] *Daubert*, 509 U.S. at 592; *Bocanegra*, 320 F.3d at 584; *Lassiegne*, 202 F. Supp. 2d at 514.
[20] *Daubert*, 509 U.S. at 589; *Kumho Tire Co.*, 526 U.S. at 147; *Bocanegra*, 320 F.3d at 584; *Lassiegne*, 202 F. Supp. 2d at 515.
[21] *Lassiegne*, 202 F. Supp. 2d at 515.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 charges trial courts to act as "gatekeepers" of proffered expert testimony by making a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[22] Thus, *Daubert* requires the trial court to ensure that the expert testimony is "not only relevant, but reliable."[23] The aim of the reliability inquiry is to exclude expert testimony based merely on subjective belief or unsupported speculation.[24]

In *Lori Milligan v. Chevron U.S.A.*, Inc. a similar situation was presented to Judge Melancon in the Western District of Louisiana.[25] In that case, Judge Melancon limited Plaintiff's vocational rehabilitation counselor from offering testimony of higher wages when there was no evidence other than rank speculation that the plaintiff could have earned those higher wages. Similarly, Plaintiff herein should be prohibited from presenting testimony in the case *sub judice* as any evidence of his admission into the Steersman Program, higher wages that would have resulted therefrom, as well as working until he was seventy-four are unreliable and unsupported by any actual evidence developed in this case.

Dr. Davis has testified after a review of all of Plaintiff's pre-employment/post-offer physical and annual physicals that Plaintiff had poor vision that required a waiver from the U.S. Coast Guard. When discussing Plaintiff's poor vision, Dr. Davis testified that Plaintiff was not cleared for work requiring binocular vision as Plaintiff had monocular vision.[26] When asked if the U.S. Coast Guard would have permitted Plaintiff to become a Captain in light of his

---

[22] *Daubert*, 509 U.S. at 592-93.
[23] *Id* at 589.
[24] *Id* at 590.
[25] *Lori Milligan v. Chevron U.S.A. Inc.*, Civil Action No. 6"06-cv-1062 (W.D. La. 2007) at Ct. R. Doc.s 19-2 and 54.
[26] Exhibit 4, *Deposition Testimony of All Industrial Medical Services LLC/Dr. Robert Davis* taken November 16, 2020 at 5:14-8:20.

monocular vision, Dr. Davis testified that there are circumstances; however, same is contingent on meeting these circumstances and U.S. Coast Guard approval.[27] Dr. Davis testified that "every now and then" they see the U.S. Coast Guard approve someone with poor vision for Captain credentials.[28] However, that does not mean EMS would have admitted Plaintiff to the program nor had an opening for Plaintiff to work as a Captain assuming he got into the Program and successfully completed same. Further, there is no evidence that had Plaintiff gotten his waiver, gotten into the Program, successfully completed the Program, and been hired for the position of a Captain onboard an EMS vessel, there is no evidence that a "green" Captain would earn the kind of wages relied upon by Ms. Crawford and Dr. Rice.

Simply, the idea of Plaintiff becoming a Captain for EMS is purely speculative and depends on several circumstances. Many of these circumstances are outside of EMS' control. Additionally, there is no reliable evidence that Plaintiff would have worked until he was seventy-four that would permit Dr. Rice's opinion to pass the *Daubert* and Rule 702 scrutiny. Thus, any opinion by any of Plaintiffs' experts regarding same, especially Ms. Crawford's that he "likely" would have been admitted is unfounded.

Plaintiff has noticed the Federal Rule 30(b)(6) Corporate Deposition of Enterprise Marine Services LLC. That deposition is scheduled to take place on December 16, 2020. It is highly anticipated that testimony regarding the contents of this motion will be discussed and that testimony from the Corporate Representative, Mr. Eric Ricker, will buttress these arguments. EMS plans to file a supplemental memorandum to aid this Honorable Court in reaching the correct conclusion upon receipt of that transcript.

---

[27]. Ex. 4 at 9:12-12:25.
[28] Ex. 4 at 12:19-25.

## CONCLUSION

Defendant Enterprise Marine Services LLC respectfully move this Court to exercise its gate-keeping function by excluding the unreliable testimony of Plaintiffs' experts regarding Plaintiff's work-life until age seventy-four, likelihood of getting into the EMS Steersman Program, and any effect that would have on Plaintiff economically. The unreliability, which is apparent from their respective reports, presents threshold issues of evidentiary integrity, not merely fodder for cross-examination. Accordingly, the proffered testimony must be excluded *in limine*, pursuant to the command of the Federal Rules of Evidence, *Daubert* and its Fifth Circuit progeny.

Respectfully Submitted on this 9th day of December, 2020,

**THOMPSON, COE, COUSINS & IRONS, LLP**

*s/ Mark A. Hill*
**RANDOLPH J. WAITS (13157) T.A.**
**MATTHEW F. POPP (24608)**
**MARK A. HILL (33891)**
650 Poydras Street, Suite 2105
New Orleans, Louisiana 70130
Telephone: (504) 526-4350
Facsimile: (504) 526-4310
E-mail: mhill@thompsoncoe.com

*Counsel for Enterprise Marine Services LLC*

## CERTIFICATE OF SERVICE

I hereby certify that to the best of my knowledge all counsel of record consent to and participate in receiving electronic notification from the CM/ECF system, and that the Clerk of the Court for the Eastern District of Louisiana, using the CM/ECF system, will electronically send notification of the filing of this pleading to all counsel of record.

s/ *Mark A. Hill*
MARK A. HILL