UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT CARR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-14777** |
| **ENTERPRISE MARINE SERVICES, LLC** | **SECTION: "G"(3)** |

**ORDER AND REASONS**

In this litigation, Plaintiff Robert Carr ("Plaintiff") brings suit against Defendant Enterprise Marine Services, LLC ("EMS").[1] Plaintiff alleges that he was injured while Plaintiff was working as a tankerman on a vessel owned and operated by EMS.[2] Before the Court is "Defendant Enterprise Marine Services LLC's Motion *in Limine* to Limit Plaintiff's Expert Witness Testimony."[3] Plaintiff opposes the motion.[4] Considering the motion, the memoranda in support and opposition, the arguments made at oral argument, the record, and the applicable law, the Court denies the motion.

**I. Background**

On December 30, 2019, Plaintiff filed a Complaint in this Court against EMS, asserting claims under the Jones Act, 46 U.S.C. § 30104.[5] Plaintiff alleges that he was employed by EMS

---

[1] Rec. Doc. 1.

[2] *Id.*

[3] Rec. Doc. 26.

[4] Rec. Doc. 28.

[5] Rec. Doc. 1 at 1.

1

as a tankerman.[6] Plaintiff further alleges that on or about November 28, 2018, Plaintiff was performing his duties as a tankerman for EMS when he sustained a "serious and permanent disabling injury to his lumbar spine."[7] Plaintiff claims that EMS failed to furnish Plaintiff with a safe workplace and that Plaintiff's alleged injuries were caused by the "unseaworthy condition of the tug and barge" purportedly owned and operated by EMS.[8] Plaintiff seeks damages for pain and suffering, lost wages, medical expenses, and loss of enjoyment of life.[9]

## II. Parties' Arguments

A.   *EMS's Arguments in Support of the Motion* in Limine

EMS seeks to limit the proposed testimony of three of Plaintiff's expert witnesses: Plaintiff's vocational rehabilitation counselor Kasey Crawford ("Ms. Crawford"), economist Randolph Rice ("Dr. Rice"), and Plaintiff's marine safety expert Captain Michael Weeks ("Captain Weeks").[10] EMS seeks to prohibit Plaintiff's experts from testifying about: "(1) any potential work-life of Plaintiff in excess of the U.S. Department of Labor's accepted work-life statistics and (2) from assuming Plaintiff would have become an Operator/Captain with [EMS]."[11]

Specifically, EMS seeks to exclude Ms. Crawford's proposed testimony that Plaintiff would "likely" get into the Steersman Program that would allow Plaintiff to become a Captain

---

[6] *Id.*

[7] *Id.* at 2.

[8] *Id.*

[9] Rec. Doc. 1-2 at 5.

[10] Rec. Doc. 26-1 at 1.

[11] Rec. Doc. 26 at 1.

with EMS because EMS asserts there is no evidence to support this testimony and Ms. Crawford is not qualified to render such an opinion.[12] EMS also seeks to exclude Dr. Rice's proposed testimony regarding Plaintiff's alleged economic damages if Plaintiff continued to work until he was 74 years of age because "there is no evidence that Plaintiff would have been admitted to the Steersman Program at EMS to become a Captain nor is there any reliable evidence that Plaintiff would have worked until he was seventy-four."[13] Finally, EMS contends that Captain Weeks "is expected to find a way to testify about Steersman Programs in general and try to apply it to Plaintiff's situation . . . [o]ut of an abundance of caution, EMS seeks an Order deterring this from occurring."[14]

### B.     *Plaintiff's Arguments in Opposition to the Motion* in Limine

Plaintiff counters that Dr. Rice and Ms. Crawford's opinions are "properly formulated and [] reliable."[15] Plaintiff contends that both Dr. Rice and Ms. Crawford's opinions "were not only based on [Plaintiff's] direct testimony that he was actively working towards becoming a captain, but also his past work history, which clearly evidences his progression from deckhand, to tankerman, to mate."[16] Plaintiff further contends that any opinion offered by Dr. Rice concerning the calculation of economic damages had Plaintiff continued working until age 74 is admissible because questions relating to the basis or sources of an expert's opinion do not affect

---

[12] Rec. Doc. 26-1 at 2.

[13] *Id.* at 2–3.

[14] *Id.* at 3.

[15] Rec. Doc. 28 at 5.

[16] *Id.* at 5–6.

admissibility.[17] In addition, Plaintiff argues that Defendant's request to preemptively exclude any testimony of Captain Weeks about Steersman Programs generally is "premature" and "without basis."[18]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[19] Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education," may testify when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[20] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony [must be] based on sufficient facts or data,

(2) the testimony [must be] the product of reliable principles and methods, and

(3) the expert [must reliably apply] the principles and methods to the facts of the case.[21]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[22] The court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the

---

[17] *Id.* at 6.

[18] *Id.* at 6–7.

[19] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[20] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[21] Fed. R. Evid. 702.

[22] *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

4

proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence.[23] The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid.[24] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[25]

In *Daubert*, the Supreme Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community.[26] In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case.[27] The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[28]

The court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence—in

---

[23] *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[24] *See Daubert*, 509 U.S. at 592–93.

[25] *See id.* at 590.

[26] *See id.* at 592–94.

[27] *Kumho Tire*, 526 U.S. at 142; *see also Seatrax*, 200 F.3d at 372 (explaining that reliability is a fact-specific inquiry and application of *Daubert* factors depends on "nature of the issue at hand, the witness's particular expertise and the subject of the testimony").

[28] *Kumho Tire*, 526 U.S. at 152.

other words, whether it is relevant.[29] The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[30]

A court's role as a gatekeeper does not replace the traditional adversary system,[31] and "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[32] As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[33] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[34]

### IV. Analysis

EMS seeks to limit the proposed testimony of three of Plaintiff's expert witnesses: Ms. Crawford, Dr. Rice, and Captain Weeks.[35] The Court addresses each expert witness's proposed testimony in turn.

---

[29] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[30] Fed. R. Evid. 401.

[31] *See Daubert*, 509 U.S. at 596.

[32] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[33] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[34] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.1996) (internal citations and quotation marks omitted).

[35] Rec. Doc. 26-1 at 1.

6

A.    *Ms. Crawford*

EMS seeks to exclude Ms. Crawford's proposed testimony that Plaintiff would "likely" get into the Steersman Program that would allow him to become a Captain with EMS because there is no evidence to support this testimony and Ms. Crawford is not qualified to render such an opinion.[36] In opposition, Plaintiff argues that Ms. Crawford's opinion is "properly formulated and [] reliable."[37]

Ms. Crawford is Plaintiff's vocational rehabilitation expert.[38] EMS does not argue that Ms. Crawford is unqualified to testify as a vocational rehabilitation expert; rather, according to EMS, Ms. Crawford is not qualified to render an opinion that Plaintiff would "likely" get into the Steersman Program offered by EMS.[39] In Ms. Crawford's "Life Care Plan Report," Ms. Crawford represents that she based her opinions, including her opinion that Plaintiff would have "the ability to achieve the level of Captain likely within one to three years," on "the medical records provided, an interview with [Plaintiff], the opinion of his treating physician, vocational testing, the Dictionary of Occupational Titles, and associated research with local vendors."[40] Therefore, Ms. Crawford's opinions regarding Plaintiff's likely career advancement are rooted in some evidentiary support. Ms. Crawford's testimony will presumably be subject to vigorous cross examination and "[i]t is the role of the adversarial system, not the court, to highlight weak

---

[36] Rec. Doc. 26 at 2.

[37] Rec. Doc. 28 at 5.

[38] *Id.* at 1.

[39] Rec. Doc. 26-1 at 2.

[40] Rec. Doc. 28-3 at 1.

evidence."[41] EMS is free to argue to the jury that Plaintiff would not have achieved the level of Captain with EMS. Indeed, EMS notes that Dr. Davis's proposed expert testimony contradicts Ms. Crawford's proposed testimony that Plaintiff would have likely achieved the level of Captain with EMS.[42] Therefore, the Court will not exclude the challenged proposed testimony of Ms. Crawford.

### B.  Dr. Rice

EMS seeks to exclude Dr. Rice's proposed testimony regarding Plaintiff's alleged economic damages if Plaintiff continued to work until he was 74 years of age because "there is no evidence that Plaintiff would have been admitted to the Steersman Program at EMS to become a Caption nor is there any reliable evidence that Plaintiff would have worked until he was seventy-four."[43] Plaintiff counters that Dr. Rice's opinion is "properly formulated and [] reliable."[44]

In the instant motion, EMS does not argue that Dr. Rice used an unreliable methodology to calculate lost wages; rather, EMS argues that Dr. Rice used questionable assumptions about Plaintiff's remaining worklife and possible admission to the Steersman Program offered by EMS. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[45] As with Ms. Crawford, EMS's arguments go to the strength of Dr. Rice's testimony and EMS's concerns about the bases of Dr. Rice's opinion can adequately be addressed

---

[41] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

[42] Rec. Doc. 26-1 at 5–6.

[43] Rec. Doc. 26-1 at 2–3.

[44] Rec. Doc. 28 at 5.

[45] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996).

on cross-examination. Therefore, the Court will not exclude the challenged testimony of Dr. Rice.

### C.   *Captain Weeks*

EMS contends that Plaintiff's marine safety and liability expert, Captain Weeks, "is expected to find a way to testify about Steersman Programs in general and try to apply it to Plaintiff's situation . . . [o]ut of an abundance of caution, EMS seeks an Order deterring this from occurring."[46] In opposition, Plaintiff counters that EMS "is seeking some type of preemptory measure rather than the exclusion of actual existing expert testimony."[47]

EMS's request is vague and premature. Notably, EMS did not attach the expert report of Captain Weeks to the instant motion. The Court cannot rule on this issue in a vacuum. Therefore, the Court will not preemptively exclude testimony by Captain Weeks regarding Steersman Programs.

### V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that "Defendant Enterprise Marine Services LLC's Motion in Limine to Limit Plaintiff's Expert Witness Testimony"[48] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this __18th__ day of May, 2021.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[46] Rec. Doc. 26 at 3.

[47] Rec. Doc. 28 at 6.

[48] Rec. Doc. 26.